1  Timothy D. Thurman, State Bar No. 216048
2  Joseph J. Huprich, State Bar No. 195231
   Sally A. Belderian, State Bar No. 259163
3  timothy.thurman@trinlaw.com
4  TRINITY LAW ASSOCIATES, Inc.
   3470 Wilshire Blvd., Suite 930
5  Los Angeles, California 90010
   Tel: (213) 384- 9000; Fax: (213) 402 3262
6
7  Attorneys for Plaintiff(s),
8  SOON HEE SIN

9

10              **UNITED STATES DISTRICT COURT**
11     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
12
13                                 CV09-03219 PSG (MANx)

14  SOON HEE SIN, an individual,        )
                                        )   CASE NO.:
15          Plaintiffs,                 )
                                        )   **COMPLAINT FOR:**
16               v.                     )
                                        )
17  PRIMUS LENDING CORP, a              )   1.  **VIOLATION OF**
18  California corporation; GMAC        )       **TRUTH IN LENDING**
    MORTGAGE CORP., NEW YORK            )       **ACT, 15 U.S.C. § 1601**
19  FINANCIAL, INC.,  and DOES 1-10,    )   2.  **VIOLATION OF REAL**
20  inclusive,                         )       **ESTATE SETTLEMENT**
                                        )       **PROCEDURES ACT**
21          Defendants.                 )       **(RESPA), 12 U.S.C. §**
22                                      )       **2601**
                                        )   3.  **FRAUD**
23                                      )   4.  **BREACH OF**
24                                      )       **CONTRACT**
                                        )   5.  **BREACH OF THE**
25                                      )       **IMPLIED COVENANT**
                                        )       **OF GOOD FAITH AND**
26                                      )       **FAIR DEALING**
                                        )   6.  **VIOLATION OF THE**
27                                      )       **UNRUH CIVIL RIGHTS**
28

                                   1
          **COMPLAINT FOR DAMAGES AND RECISSION**





ACT, CIVIL CODE § 51 (Discrimination)

7. **VIOLATION OF CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 1981 (Discrimination)**

8. **VIOLATION OF CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983 (Discrimination)**

9. **VIOLATION OF FAIR HOUSING ACT, 42 U.S.C. § 3601 (Discrimination)**

10. **VIOLATION OF TITLE VI OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000d (Discrimination)**

11. **VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT (ECOA), 15 U.S.C. § 1691 (Discrimination)**

12. **VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE §§ 17200 and 17500**

13. **DECLARATORY RELIEF**

**TRINITY LAW ASSOCIATES**
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**COMES NOW** Plaintiff, SOON HEE SIN (referred to hereinafter as "Plaintiff") and herein complains and alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff institutes this action for actual and compensatory damages, statutory damages, rescission, punitive damages, attorney fees, and costs of this action against Defendants for violations of the following federal statutes and state law claims:

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

a.  Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, (hereinafter TILA), and Regulation Z, 12 C.F.R. § 226 *et seq.*;

b.  Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, (hereinafter RESPA), and Regulation X, 24 C.F.R. § 3500 *et seq.*;

c.  Fraud;

d.  Breach of Contract;

e.  Breach of the Implied Covenant of Good Faith and Fair Dealing;

f.  Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

g.  Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.*;

h.  Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq.*;

i.  Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

j.  Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

k.  Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*;

l.  California Business & Professions Code §§ 17200 and 17500 *et seq.*;

m. Declaratory Relief;

2.  Plaintiff only recently discovered the violations of these laws. As Plaintiff is not familiar with, or have any expertise in, mortgage transactions, does not speak English as a first language, and was never provided any of the loan transaction documentation in her native language, Plaintiff did not and could not have reasonably discovered these violations despite due diligence. As such, this action is timely as any and all applicable statutes of limitations were equitably tolled pursuant to state and/or federal law.

**JURISDICTION AND VENUE**

3.  Jurisdiction of this court is invoked under a federal question pursuant to the federal statutes outlined above and 28 U.S.C. §§ 1331 and 1337.

4.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.    This Court has jurisdiction to render the declaratory judgment Plaintiff seeks pursuant to 28 U.S.C. § 2201.

6.    Venue is proper within this district pursuant to 28 U.S.C. § 1391(b), because: (i) the real property exists within said district, (ii) the Defendant(s), and each of them, has/have or is/are doing business within the district; and (iii) further, the *pendente* causes of action pursuant to California law concerns real property within the County of Los Angeles within this district.

## PARTIES

7.    Plaintiff SOON HEE SIN is an individual and at all times relevant hereto was a resident at 233 S. Virgil Ave, in the City of Los Angeles, County of Los Angeles, State of California.

8.    Defendant PRIMUS LENDING CORP is a National Banking Association organized and existing under the laws of the United States conducting business as a financial institution in the State of California, hereinafter referred to as "BANK". Plaintiff is unaware of the current corporate and/or licensing status of BANK.

9.    Defendant GMAC MORTGAGE CORPORATION is a loan servicer in the business of servicing mortgage loans for lenders, and conducting business in the State of California, hereinafter referred to as "LOAN SERVICER" or "GMAC". Plaintiff is unaware of the current corporate and/or licensing status of LOAN SERVICER.

10.    Plaintiff is not aware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Each of said fictitiously named defendant is responsible in some manner for the violations of law herein alleged. Plaintiff will amend this complaint to add the true names of the fictitiously named Defendants once they are discovered. Whenever reference is made in this complaint to "Defendants," such reference shall include Does 1 through 10.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

11.    When reference in this complaint is made to any act or transaction of a defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that said defendant and its owners, officers, directors, agents, employees, or representatives did or authorized such acts while engaged in the management, direction, or control of the affairs of Defendants and while acting within the scope and course of their duties.

12.    Whenever in this complaint reference is made to any act of any individual defendant, such allegation shall be deemed to mean that said defendant is and was acting (a) as a principal, (b) under express or implied agency, and/or (c) with actual or ostensible authority to perform the acts so alleged on behalf of every other defendant herein.

13.    Whenever in this complaint reference is made to any act of Defendants, such allegation shall be deemed to mean the act of each defendant acting individually and jointly with the other Defendants named in that cause of action.

## COMMON FACTUAL ALLEGATIONS

14.    On or about December 26, 2006, referred to hereinafter as "Closing Date 1", Plaintiff entered into a consumer credit transaction with BANK by obtaining two mortgage loans for $650,000 and $142,000 respectively, secured by Plaintiff's principal residence, a real property commonly known as 233 S. Virgil Ave, City of Los Angeles, County of Los Angeles, State of California, hereinafter referred to as the "Property". A copy of the note and/or security agreement is attached hereto as Exhibit A, and is hereby incorporated by reference. This note was secured by a First Trust Deed on the Property in favor of BANK, a copy of which is attached hereto as Exhibit B. A legal description of the property is included with Exhibit B.

15.    The terms of the finance transaction with BANK are not clear or conspicuous, nor consistent, and include reference to a variable rate note with a "teaser rate" or discounted rate of 1%, conflicting interest rate change dates, and

1  other rates and fees for which BANK either did not disclose, make clear or had not

2  included as part of the finance charge.

3       16.    Plaintiff alleges that Defendants, and each of them, neither explained

4  the workings of the entire mortgage loan transaction, how the rates, finance charges,

5  costs and fees were computed, nor the inherent volatility of the loan product(s)

6  provided by Defendants.

7       17.    In addition, and unbeknownst to Plaintiff, BANK illegally, deceptively

8  and/or otherwise unfairly, gave Plaintiff a higher interest rate than what the actual

9  rate should have been by using the initial, interest-only feature of the loan as the

10  qualifying factor for a debt-to-income ratio analysis.  Fundamentally, BANK

11  ignored the long-standing economic principals of mortgage lending and instead,

12  greedily sold a loan with fees and expenses that were unaffordable to a borrower

13  like Plaintiff.

**COUNT I**

**VIOLATION OF TRUTH IN LENDING ACT**

**[15 USC § 1601]**

**(BANK)**

18       18.    Plaintiff repeats and realleges each and every allegation contained in

19  the above paragraphs and incorporates the same as though fully set forth at length.

20       19.    At all relevant times, Defendants were "creditors" as that term is

21  defined in § 103 of the TILA, 15 U.S.C. § 1602, and § 226.2(a)(17) of Regulation Z,

22  12 C.F.R. § 226.2(a)(17), and therefore are required to comply with the applicable

23  provisions of the TILA and Regulation Z, and other applicable laws.

24       20.    The transaction(s) which are the subject of this lawsuit are subject to

25  the right of rescission because either the loan was a non-exempt loan under TILA

26  for purposes of rescission, or Defendants otherwise treated the transaction as

27  rescindable by, among other things, providing Plaintiff with TILA disclosures

28  and/or the right to cancel.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

6

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

21.    On information and belief, in the course and conduct of offering and extending credit, Defendants violated the requirements of the TILA and Regulation Z, and other applicable laws, in one or more of the following ways within one year of the Closing Date:

    a.  Failing to identify the creditor in violation of § 128 of the TILA, 15 U.S.C. § 1638, and § 226.18(a) of Regulation Z, 12 C.F.R. § 226.18(a);

    b.  Stating a rate of finance charge without disclosing the "annual percentage rate" or "APR" in violation of § 144 of the TILA, 15 U.S.C. § 1664, and § 226.24(b) of Regulation Z, 12 C.F.R. § 226.24(b);

    c.  Failing to make required TILA disclosures before consummating a consumer credit transaction in violation of §§ 121 and 128 of the TILA, 15 U.S.C. §§ 1631 and 1638, and §§ 226.17 and 226.18 of Regulation Z, 12 C.F.R. §§ 226.17 and 226.18;

    d.  Failing to make required TILA disclosures in the required manner and form before consummating a consumer credit transaction in violation of §§ 121 and 128 of the TILA, 15 U.S.C. §§ 1631 and 1638, and §§ 226.17 and 226.18 of Regulation Z, 12 C.F.R. §§ 226.17 and 226.18;

    e.  Failing to timely make or correct certain "good faith" disclosures in violation of § 226.19 of Regulation Z, 12 C.F.R. § 226.19;

    f.  Understating the disclosed finance charge in violation of § 128 of the TILA, 15 U.S.C. § 1638, and § 226.18(d) of Regulation Z, 12 C.F.R. § 226.18(d);

    g.  Overstating the amount financed in violation of § 128 of the TILA, 15 U.S.C. § 1638, and § 226.18(b) of Regulation Z, 12 C.F.R. § 226.18(b);

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothv.thurman@trinlaw.com

h.  Understating the disclosed annual percentage rate in violation of §
128 of the TILA, 15 U.S.C. § 1638, and § 226.18(e) of Regulation
Z, 12 C.F.R. § 226.18(e);

i.  Failing to disclose or accurately disclose the "payment schedule" or
the "total of payments," including but not limited to, failing to
disclose a balloon payment, in violation of § 128 of the TILA, 15
U.S.C. §§ 1638, and §§ 226.18(g) and (h) of Regulation Z, 12
C.F.R. §§ 226.18(g) and (h);

j.  Making disclosures that do not reflect accurately the legal obligation
between the parties in violation of § 128 of the TILA, 15 U.S.C. §§
1638, and § 226.17(c) of Regulation Z, 12 C.F.R. § 226.17(c);

k.  Failing to deliver to each borrower two copies of a notice of the
right to rescind that: identified the transaction; clearly and
conspicuously disclosed the security interest in the Property; clearly
and conspicuously disclosed the Plaintiff's right to rescind the
transaction; clearly and conspicuously disclosed how to exercise the
right to rescind the transaction, with a form for that purpose,
designating the address of the defendant's place of business; clearly
and conspicuously disclosed the effects of rescission; and/or clearly
and conspicuously disclosed the accurate date the rescission period
expired, in violation of 15 U.S.C. § 1635(a) and Regulation Z §
226.23(b);

l.  Failing to provide a good faith estimate within three (3) days of the
loan application, in violation of Regulation Z §§ 226.17(b) and
226.19(b)(2);

m. Failing to provide the Consumer Handbook on Adjustable Rate
Mortgages, in violation of Regulation Z §§ 226.17(b) and
226.19(b)(1);

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothv.thurman@trinlaw.com

n.  Failing to provide a copy of the HUD-1 statement at Closing Date, in violation of Regulation Z § 226.18(c);

o.  Failing to clearly, conspicuously and accurately disclose in its advertising the down payment, number of payments or period for payments, amount of payments, and the finance charge, in violation of Regulation Z § 226.24(d);

p.  Failing to offer the same interest rate and/or terms of the loan represented and/or promised during the loan application stage as the final consumer transaction terms reflected in the promissory note; and/or

q.  Failing to invoice borrower for the mortgage loan which borrower either agreed to or was led to believe would be his/her loan terms.

22.  As a proximate result of the aforesaid violations of the Act, Plaintiff detrimentally relied upon such inaccurate disclosures and/or non-disclosures by Defendants and has sustained damages, including but not limited to, paying fees and charges in excess of what he/she should have paid but for the violations, all in an amount to be proven at trial.

23.  As a result of the aforesaid violations of the Act, Defendants are liable to Plaintiff for:

a.  Rescission of the transaction;

b.  Termination of any security interest in Plaintiff's Property created under the transaction;

c.  Return of any money or property given by the Plaintiff to anyone, including Defendants, in connection with this transaction;

d.  Statutory damages of $2,000 for disclosure violations;

e.  Statutory damages of $2,000 for Defendants' failure to respond properly to Plaintiff's rescission notice;

f.  Forfeiture of return of loan proceeds;

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

g.  Actual damages in an amount to be determined at trial;

h.  Reasonable attorney's fees and costs.

## COUNT II

## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

## [12 USC § 2601]

## (BANK)

24.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

25.    On information and belief, Defendants are lenders, creditors, mortgage brokers, and/or services, including their agents and employees, who regularly extend federally-insured mortgage loans, HUD-related loans, or loans intended to be sold on the secondary market, intended for the purchase of a one- to four-family residential property, to which the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617, and Regulation X (24 C.F.R. § 3500 *et seq*.) applies.

26.    On information and belief, Defendants, and each of them, violated RESPA in one or more of the following ways:

a.  Failing to provide the Special Information Booklet explaining the settlement costs within three (3) business days after Plaintiff submitted his/her loan application, pursuant to Regulation X § 3500.6;

b.  Failing to provide, in a clear and concise form, a good faith estimate of the amount of settlement charges the borrower is likely to incur at Closing Date within three (3) business days after Plaintiff submitted his/her loan application, pursuant to Regulation X § 3500.7;

c.  Failing to reflect in the good faith estimate the required use of a particular settlement service provider, the costs of such provider, and all necessary disclosures for such provider;

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

d. Failing to properly provide, and in a clear and conspicuous form, the HUD-1 settlement statement at or before the Closing Date with all settlement charges related to the transaction, pursuant to Regulation X §§ 3500.8 and 3500.10;

e. Charging a fee for preparation of the settlement statement, escrow account statement, and/or the TILA disclosure statement, pursuant to Regulation X § 3500.12;

f. Failing to disclose an affiliated business arrangement, pursuant to Regulation X § 3500.15;

g. Giving, providing and/or receiving a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums, pursuant to Regulation X § 3500.14;

h. Charging fees in excess of the reasonable value of goods provided and/or services rendered;

i. Requiring the borrower(s) to deposit funds in escrow in excess of the statutorily permitted amounts;

j. Failing to inform the borrower(s) of defendant's intention to transfer the servicing of the loan and/or failing to inform the borrower(s) of the actual transfer within fifteen (15) days before the effective date of the transfer, pursuant to Regulation X § 3500.17(e);

k. Failing to provide borrower(s) with a mechanism to obtain information about their loan and to correct erroneous information regarding their loan;

l. Failing to properly and timely pay for property taxes, insurance and other charges for which Defendants are collecting within an escrow impound account; and/or

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262: timothy.thurman@trinlaw.com

m. Failing to adequately and timely respond to borrower(s) qualified written request, pursuant to Regulation X § 3500.21(e).

27.    As a proximate result of the aforesaid violations of the Act, Plaintiff detrimentally relied upon such inaccurate disclosures and/or non-disclosures by Defendants and has sustained damages, including but not limited to, paying fees and charges in excess of what he/she should have paid but for the violations, all in an amount to be proven at trial.

28.    As a result of the aforesaid violations of the Act, Defendants are liable to Plaintiff for:

a. Actual damages in an amount to be determined at trial;

b. Statutory damages of $1,000;

c. Treble damages;

d. Reasonable attorney's fees and costs.

## COUNT IV

## FRAUD

## (BANK)

29.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

30.    Prior to Closing Date, Defendant, through verbal and/or written communications, falsely and fraudulently represented to Plaintiff that the only way that Plaintiff could obtain a lower rate was by payment of a loan discount fee.

31.    The true facts are that Plaintiff was already qualified and did not need to pay extra for the discount fee.

32.    When the Defendant made these representations they knew them to be false, and these representations were made by Defendants with the intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff to act in the manner herein alleged.

PLAINTIFF'S COMPLAINT FOR DAMAGES

1     33.    When the Defendants made these representations it knew them to be
2  false, and these representations were made by Defendants with the intent to defraud
3  and deceive Plaintiff and with the intent to induce Plaintiff to act in the manner
4  herein alleged.

5     34.    Plaintiff, at the time these representations were made by Defendants
6  and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of
7  Defendants' representations and believed them to be true.

8     35.    In reliance on these representations, Plaintiff was induced to and did
9  enter into the mortgage loan transaction(s) with Defendants.

10     36.    Had Plaintiff known the actual facts, Plaintiff would not have taken
11  such action.

12     37.    Plaintiff's reliance on Defendant's representations was justified because
13  Plaintiff is not in the business of mortgage lending and reasonably relied upon
14  Defendants to fully inform and disclose to Plaintiff the true nature of the terms of
15  the loan as more fully described above.

16     38.    As a proximate result of Defendant's fraud and deceit, and the facts
17  herein alleged, Plaintiff has been damaged in an amount to be proven at trial and is
18  also entitled to restitution and/or rescission (pursuant to Cal. Civil Code § 1688 *et*
19  *seq.*) of the transaction which is the subject(s) of this action.

20     39.    In doing the acts herein alleged, Defendants acted with oppression,
21  fraud, and malice, and Plaintiff is entitled to punitive damages in an amount to be
22  proven at trial.

### COUNT V
### BREACH OF CONTRACT
### (BANK)

26     40.    Plaintiff repeats and realleges each and every allegation contained in
27  the above paragraphs and incorporates the same as though fully set forth at length.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262: timothy.thurman@trinlaw.com

41.    Plaintiff entered into a written agreement with BANK for a mortgage loan, a copy of which is attached as Exhibit C.

42.    On information and belief, BANK breached the agreement by, among other things, failing to calculate the index value correctly and stating them at a higher value.

43.    Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the contract.

44.    As a proximate result of the aforesaid breach of contract, BANK is liable to Plaintiff for actual and compensatory damages according to proof at trial, attorney's fees and costs.

### COUNT VI
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (BANK and LOAN SERVICER )

45.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

46.    On information and belief Plaintiff alleges that at all times mentioned herein there existed between Plaintiff and Defendants, and each of them, either a direct or implied contractual covenant of good faith and fair dealing requiring Defendants and each of them to safeguard, protect or otherwise care for the assets and/or rights of the Plaintiff.  Said covenants prohibited them from activities interfering with or contrary to the rights of the Plaintiff.

47.    On information and belief, Plaintiff alleges that any attempt to foreclose upon the property lawfully belonging to Plaintiff without production of documents demonstrating the lawful rights for said foreclosure would constitute a breach of the said covenant of good faith and fair dealing.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

48.    As a direct and legal result of said acts by Defendants, and each of them, Plaintiff alleges that she has been damaged legally and proximately in amounts according to proof at time of trial.

**COUNT VII**

**VIOLATION OF CALIFORNIA CIVIL CODE § 2923.6**

**(LOAN SERVICER and BANK)**

49.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

50.    Pursuant to California Civil Code § 2923.6, a loan servicer "acts in the best interest of all parties if it agrees to or implements a loan modification where the (1) loan is in payment default, and (2) anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis."

51.    Plaintiff previously submitted a request for a loan modification, but was denied by LOAN SERVICER and/or BANK.

52.    A loan modification would be in the best interest of all parties in this case because Plaintiff is currently in default and the recovery under a loan modification or workout plan would exceed the anticipated recovery through foreclosure, estimated to be the fair market value of no more than $833,000, less costs on average of $77,935 for foreclosure (as published by the Joint Economic Committee of Congress), or $755,065.

53.    As a result of the aforementioned violations by Defendant(s), Plaintiff has been damaged in an amount according to proof at trial, including but not limited to, attorney's fees and costs.

54.    Plaintiff also seeks, in addition to other remedies sought in this Complaint, an order from the Court modifying Plaintiff's loan and/or directing that LOAN SERVICER and BANK modify Plaintiff's loan by one or more of the

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1  following methods: reduction of principal, reduction of interest rate, alteration of the

2  term of the loan, and/or such other method as the Court deems just and proper.

**COUNT VIV**

**VIOLATION OF UNRUH CIVIL RIGHTS ACT**

**CAL. CIVIL CODE § 51**

**(BANK)**

7    55.    Plaintiff repeats and realleges each and every allegation contained in

8  the above paragraphs and incorporates the same as though fully set forth at length.

9    56.    On information and belief, the conduct of Defendants violated

10  California Civil Code § 51 in that Defendants discriminated against, boycotted, or

11  blacklisted, refused to lend to, contract with, or refinance, or offered significantly

12  less worthy credit to the Plaintiff based on his/her race, color, religion, ancestry, and

13  national origin..

14    57.    The above actions were conducted under color of state law in that

15  Defendants, as Banks, are entangled with the Federal government, in that the

16  BANKS Defendants are heavily regulated by the Federal government, the Federal

17  government loans the BANKS money, and Plaintiff is informed and believes, these

18  Defendants have received aid from the Federal government.

19    58.    As a direct and legal result of Defendants' violation of Civil Code § 51

20  and other state constitutional rights, Plaintiff suffered violations of her civil rights.

21    59.    As a direct, foreseeable, and proximate result of said wrongful acts by

22  Defendants, Plaintiff suffered incidental and consequential damages and losses, all

23  in an amount to be proven at time of trial. Plaintiff claims such amount as damages

24  together with prejudgment interest pursuant to Civil Code § 3287 and any other

25  provision of law providing for prejudgment interest.

26    60.    As a further direct, foreseeable, and proximate result of said wrongful

27  acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame,

28

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

16

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothv.thurman@trinlaw.com

1    despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's

2    damage in an amount to be proven at time of trial.

3        61.    As a further direct, foreseeable, and proximate result of said wrongful

4    acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be

5    determined, for which Plaintiff claims a sum to be established according to proof.

6        62.    The conduct of Defendants and their agents and employees as

7    described herein was oppressive, fraudulent and malicious, done in conscious

8    disregard of Plaintiff's rights, and done by managerial employees of Defendants,

9    and each of them. Plaintiff is thereby entitled to an award of punitive damages

10   against Defendants, in an amount appropriate to punish and make an example of

11   Defendants, and in an amount to conform to proof.

12       63.    By virtue of the provisions of Civil Code § 52.1, Plaintiff is entitled to

13   an award of reasonable attorneys' fees and costs.

## COUNT X

## VIOLATION OF CIVIL RIGHTS ACT OF 1991

## [42 USC § 1981]

## (BANK)

18       64.    Plaintiff repeats and realleges each and every allegation contained in

19   the above paragraphs and incorporates the same as though fully set forth at length.

20       65.    This cause of action is brought pursuant to 42 U.S.C. § 1981, *et seq.*,

21   which provides that all persons in the United States have the same right to make and

22   enforce contracts.

23       66.    Plaintiff is informed and believes, and thereupon alleges that

24   Defendants, and each of them, loaned Plaintiff an amount that was unreasonable

25   according to his/her employment and income and were careless in taking her loan

26   application into consideration.

27       67.    The above actions were conducted under color of state law in that

28   Defendants, as Banks, are entangled with the Federal government, in that the

17

1    BANKS Defendants are heavily regulated by the Federal government, the Federal

2    government loans the BANKS money, and Plaintiff is informed and believes, these

3    Defendants have received aid from the Federal government.

4        68.    Plaintiff seeks full compensation for the discriminatory acts he/she has

5    suffered.

6        69.    Plaintiff seeks an injunction to prohibit Defendants from engaging in

7    the unfair and discriminatory business practices complained of herein.

8        70.    The acts complained of herein occurred, at least in part, within the last

9    year preceding the filing of the complaint in this action.

10       71.    As a direct, foreseeable, and proximate result of said wrongful acts by

11   Defendants, Plaintiff suffered and will continue to suffer humiliation, shame,

12   despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in

13   an amount to be proven at time of trial.

14       72.    As a further direct, foreseeable, and proximate result of said wrongful

15   acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be

16   determined, for which Plaintiff claims a sum to be established according to proof.

17       73.    The conduct of Defendants and their agents and employees as

18   described herein was oppressive, fraudulent and malicious, done in conscious

19   disregard of Plaintiff's rights, and done by managerial employees of Defendants.

20   Plaintiff is thereby entitled to an award of punitive damages against Defendants, in

21   an amount appropriate to punish and make an example of Defendants, and in an

22   amount to conform to proof.

**COUNT XI**

**VIOLATION OF CIVIL RIGHTS ACT OF 1871**

**[42 USC § 1983]**

**(BANK)**

27       74.    Plaintiff repeats and realleges each and every allegation contained in

28   the above paragraphs and incorporates the same as though fully set forth at length.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

18

75. This cause of action is brought pursuant to 42 U.S.C. § 1983, which provides that every person who subjects any citizen of the United States to a deprivation of his or her civil rights is subject to penalty.

76. As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in an amount to be proven at time of trial.

77. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

78. The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

79. The above actions were conducted under color of state law in that Defendants, as Banks, are entangled with the Federal government, in that the BANKS Defendants are heavily regulated by the Federal government, the Federal government loans the BANKS money, and Plaintiff is informed and believes, these Defendants have received aid from the Federal government.

## COUNT XII

## VIOLATION OF TITLE VI OF CIVIL RIGHTS ACT OF 1964

## [42 USC § 2000d]

## (BANK)

80. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

81.     This cause of action is brought pursuant to 42 U.S.C. § 2000d, which provides that "no person in the United States shall, on the ground of race, color, gender or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

82.     Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned Defendants have engaged in practices that are unlawful under 42 U.S.C. § 2000d, including but not limited to providing an exorbitant loan amount to Plaintiff, with a limited and/or inconsistent income, from a minority background, with no prior home buying experience, and/or offering a loan to Plaintiff that is significantly more costly than those offered to others of a different race, ethnicity or national origin.

83.     The Defendants preyed upon this minority, and with reckless disregard to how Plaintiff could make payments without default, provided Plaintiff with a higher cost loan that he/she should have never qualified for, therefore getting him/her into a deep financial mess which he/she may not have ever been in had the Defendants done ample due diligence and concluded that he/she should not qualify for such financing on such loan amount.

84.     Plaintiff seeks full compensation for the discriminatory acts he/she has suffered.

85.     Plaintiff seeks an injunction to prohibit Defendants from engaging in the discriminatory practices complained of herein.

86.     The acts complained of herein occurred, at least in part, within the last year preceding the filing of the complaint in this action.

87.     As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in an amount to be proven at time of trial.

PLAINTIFF'S COMPLAINT FOR DAMAGES

88.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

89.     The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

**COUNT XIII**

**VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT**

**[15 U.S.C. § 1691]**

**(BANK)**

90.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

91.     This cause of action is brought pursuant to 15 U.S.C. § 1691, which makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex, marital status, or age.

92.     Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned Defendants have engaged in practices that are unlawful under the Act, including but not limited to providing an exorbitant loan amount to Plaintiff, with a limited and/or inconsistent income, from a minority background, with no prior home buying experience, and/or offering a loan to Plaintiff that is significantly more costly than those offered to others of a different race, ethnicity or national origin.

93.     The Defendants preyed upon this minority, and with reckless disregard to how Plaintiff could make payments without default, provided Plaintiff with a

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1    higher cost loan that he/she should have never qualified for, therefore getting

2    him/her into a deep financial mess which he/she may not have ever been in had the

3    Defendants done ample due diligence and concluded that he/she should not qualify

4    for such financing on such loan amount.

5         94.    Plaintiff seeks full compensation for the discriminatory acts he/she has

6    suffered.

7         95.    As a direct, foreseeable, and proximate result of said wrongful acts by

8    Defendants, Plaintiff suffered and will continue to suffer humiliation, shame,

9    despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in

10   an amount to be proven at time of trial.

11        96.    As a further direct, foreseeable, and proximate result of said wrongful

12   acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be

13   determined, for which Plaintiff claims a sum to be established according to proof.

14        97.    The conduct of Defendants and their agents and employees as

15   described herein was oppressive, fraudulent and malicious, done in conscious

16   disregard of Plaintiff's rights, and done by managerial employees of Defendants.

17   Plaintiff is thereby entitled to an award of punitive damages against Defendants, in

18   an amount appropriate to punish and make an example of Defendants, and in an

19   amount to conform to proof.

20                              **COUNT XIV**

21              **VIOLATION OF CALIFORNIA BUSINESS AND**

22            **PROFESSIONS CODE §§ 17200 AND 17500**

23                          **(ALL DEFENDANTS)**

24        98.    Plaintiff repeats and realleges each and every allegation contained in

25   the above paragraphs and incorporates the same as though fully set forth at length.

26        99.    The Unfair Competition Law and Unfair Business Practices Act,

27   codified in Business & Professional Code §§ 17200 and 17500 *et. seq.*, provides that

28

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

22

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1 | unfair competition shall mean and include any unlawful, unfair or fraudulent

2 | business act or practice and unfair, deceptive, untrue or misleading advertising.

3 |     100.   On information and belief, Defendant's acts or practices of failing to

4 | accurately and adequately disclose the true loan terms, failing to provide Plaintiff

5 | with the necessary disclosures and documents, violating anti-predatory lending

6 | statutes requiring such disclosures, etc., all as previously alleged within this

7 | Complaint, was and is illegal, unfair, fraudulent and/or deceptive.

8 |     101.   By committing the acts and practices alleged herein, Defendants have

9 | been and continue to be engaged in illegal, unfair and/or deceptive business

10 | practices within the meaning of the Business & Professions Code §§ 17200 and

11 | 17500 *et. seq.*

12 |     102.   Plaintiff has been injured in fact and has lost money and property as a

13 | result of Defendants' unfair business practices as alleged throughout this Complaint.

14 |     103.   Defendants, through their acts of illegal, unfair or deceptive business

15 | practices, have obtained a value as a direct result of their scheme.

16 |     104.   Plaintiff requests that the Court grant relief by way of restitution by

17 | ordering that the Defendants return any direct or indirect gains to the Plaintiff and to

18 | enjoin Defendants from continuing to violate the Business & Professional Code by

19 | such conduct in the future.

20 |     105.   Plaintiff also respectfully requests an award of attorneys' fees, costs and

21 | expenses against Defendants.

22 | **COUNT XV**

23 | **DECLARATORY RELIEF**

24 | **(BANK)**

25 |     106.   Plaintiff repeats and realleges each and every allegation contained in

26 | the above paragraphs and incorporates the same as though fully set forth at length.

27 |     107.   A dispute has arisen between and among the Plaintiff and the

28 | Defendants herein, and each of them, as to the duties and obligations of the

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

1 respective parties with regard to the mortgage loan transaction(s) and/or foreclosure

2 proceedings.

3    108.   These disputes concern, but are not necessarily limited to, the rights

4 and duties of the parties under the promissory note(s) between them, the various

5 statutes at issue in this litigation, the ownership to the Property, and/or the right of

6 Defendant(s) to foreclose on the Property.

7    109.   As these questions concern issues with regard to Plaintiff's Property,

8 he/she is thus required to seek this relief.

9    110.   Plaintiff further alleges that a declaration of rights and duties of the

10 parties herein by the Court is essential to determine the actual status and validity of

11 the mortgage loan transaction and any rights duties and/or obligations as to the

12 enforcement of it.

13    111.   Plaintiff has exhausted any and all applicable administrative remedies

14 required under the law and for which notice has been provided to Plaintiff.

**PRAYER**

**WHEREFORE,** Plaintiff prays for damages and other relief as follows:

1.    Rescission of the mortgage loan transaction(s) which are the subject of
      this action;

2.    Termination of any security interest in Plaintiff's Property created
      under the transaction(s);

3.    Return of any money or property given by the Plaintiff to anyone,
      including Defendants, in connection with this transaction;

4.    Compensatory and/or actual damages according to proof;

5.    A judicial declaration of the rights, duties and/or obligations of the
      parties hereto;

6.    Statutory damages;

7.    Restitution;

8.    Punitive damages;

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

9.    Injunctive relief including the immediate issuance of a preliminary restraining order, and thereafter a temporary or permanent injunction to maintain the status quo pending adjudication;

10.   Personal injury damages, including but not limited to, mental anguish and/or emotional distress;

11.   Attorneys' fees according to statute;

12.   Costs of this suit; and

13.   Such other and further relief as this court shall deem fair equitable and just.

DATED: May 6, 2009                    TRINITY LAW ASSOCIATES


By: _____
Timothy D. Thurman
Attorneys for Plaintiff

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

MIN: 1003141-7060000370-1

# HOME EQUITY LINE OF CREDIT AGREEMENT
# AND PROMISSORY NOTE
### (SECONDARY LIEN)

Borrower's Name and Address: SOON HEE SIN
233 SOUTH VIRGIL AVENUE, LOS ANGELES, CALIFORNIA 90004

Property Serving as Security (the "Property"): 233 SOUTH VIRGIL AVENUE, LOS ANGELES, CALIFORNIA 90004

Lender's Name and Address: PRIMUS LENDING CORP , A CALIFORNIA CORPORATION 3699 WILSHIRE BLVD. SUITE 670, LOS ANGELES, CALIFORNIA 90010

| | | |
|---|---|---|
| No.: 7-06-0000370 | Initial Advance: $ 142,000.00 | Maturity Date: 01/01/2022 |
| Date: 12/20/2006 | Minimum Advance: $ 100.00 | Billing Cycle: Monthly |
| Line of Credit: $ 142,000.00 | Draw Period: 60 | Payment Date: Monthly |
| | Repayment Period: 120 | |

1.   **GENERAL TERMS AND DEFINITIONS.**  This is the Agreement establishing your Home Equity Line of Credit.

In this Agreement, many of the terms we use have special meanings:

(a)   "You," "your" and "yours" means each and all Borrowers who sign this Agreement and any persons who use the Line of Credit, jointly and severally.
(b)   "We," "us" and "our" means Lender, and its successors and assigns.
(c)   "Account" means the Line of Credit Account established by this Agreement.
(d)   "Billing Cycle" means the period of time normally covered by periodic billing statements and includes such period of time even when a statement is not sent because there is otherwise no balance in your Account for that period.
(e)   "Credit Limit" means the maximum amount of principal shown above that we will ordinarily allow you to owe us at any time under this Agreement.
(f)   "Credit Line Checks" means the checks used to access the Line of Credit funds during the Draw Period.
(g)   "Draw Period" means the period of time shown above during which you can receive advances under this Agreement.
(h)   "Initial Advance" means the amount of money we will require you to accept as an advance to open the Account.
(i)   "Line of Credit" means the home equity line of credit offered to Borrower by Lender pursuant to the terms of this Agreement.
(j)   "Loan Account Balance" means the sum of the unpaid principal of advances made under your Line of Credit, plus unpaid but earned finance charges, plus any costs, expenses, and fees that are due.
(k)   "Maturity Date" for Line of Credit is JANUARY 1, 2022          . On this date, you promise to pay any remaining Loan Account Balance.
(l)   "Minimum Advance" means the smallest amount of money we will advance to you under this Agreement.
(m)   "Minimum Payment" means the minimum payment you must make on the Line of Credit, as reflected on each periodic billing statement Lender will deliver to you for each Billing Cycle.

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

HAGT2CA (06/02) (Rev. 02/05)
Form Filled Using DocMagic
800-649-1362  www.docmagic.com

Page 1 of 10

(n)    "Plan" refers to this Home Equity Line of Credit collectively.

(o)    "Repayment Period" means the period of time shown above during which you must repay the outstanding balance of your Account, with accrued interest, but may not request further advances. The Repayment Period begins at the end of the Draw Period, and ends on the earlier of the Maturity Date or the date when final payment of the Loan Account Balance has actually been made.

This is a personal line of credit which we are making available to you to obtain loans up to the Credit Limit on the terms and conditions contained in this Agreement. You will be able to obtain such loans from time to time, and in such amounts that we may advance and re-advance to you up to the Credit Limit, subject to the terms of this Agreement.

2.    PROMISE TO PAY; CREDIT LIMIT. You promise to pay to Lender, or order, the total of all funds which are advanced and re-advanced to you from time to time under this Agreement, plus interest thereon, as set forth below. You also promise to pay Lender, or order, all other amounts, fees, costs and charges you are responsible for under this Agreement and that are permitted or not prohibited by applicable law. You must repay the entire outstanding Loan Account Balance, plus all accrued interest and any fees and charges due and payable on the Account, on or before the Maturity Date shown above. In the event all such sums are not paid on or before the Maturity Date, then interest shall continue to accrue on the Loan Account Balance using the same method of calculating your interest rate as set forth below.

Your Credit Limit is set forth at the beginning of this Agreement. You agree not to allow the principal amount that you owe on the Account to exceed the Credit Limit. If you do exceed the Credit Limit, you will repay the excess immediately.

3.    SECURITY. All amounts due under the Account are secured by a mortgage, deed of trust, or security deed (the "Security Instrument") on the Property. You agree to pay all amounts due from you, and otherwise perform all covenants and obligations required of you, under the Security Instrument. If it becomes necessary for us to advance funds to you beyond the Credit Limit to protect our security interest, those amounts in excess of the Credit Limit will be owed by you and will be secured by the Security Instrument. The Security Instrument and this Agreement are related documents and a default under one document will be treated as a default under the other document. To the extent permitted by applicable law, the lien of the Security Instrument will continue and will have the same priority of claim if, with your consent, we renew, extend, amend, modify or substitute this Agreement. In the event of such renewal, extension, modification or substitution, you agree to execute any additional documents necessary to accomplish the action being taken.

Property securing any other loans that you have with us may also secure this Agreement.

4.    LOAN ADVANCES. We are not obligated to advance any funds to you under this Agreement until: (a) the Security Instrument: (i) has been reviewed by us for accuracy and completeness, (ii) has been recorded in the appropriate land records of the jurisdiction in which the Property is located, and (iii) constitutes a valid lien on the Property, with no other encumbrances on the Property except for any prior mortgage or deed of trust and declarations, easements or restrictions of record listed in a schedule of exceptions to coverage in the title insurance policy insuring Lender's interest in the Property and to which Lender has agreed; and (b) any applicable right of rescission has expired without exercise of that right.

After these conditions have been satisfied, you may obtain advances on your Account by using the Credit Line Checks. You may only write Credit Line Checks during the Draw Period, and only for amounts equal to or greater than the Minimum Advance amount shown above, subject to your Credit Limit. If your request is for less than the Minimum Advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the Minimum Advance in the future. We always have the option to deny any such request. During the Draw Period, you may draw upon your Account, within the Credit Limit, until it is terminated or unless additional advances are otherwise prohibited, as provided below. We will not honor Credit Line Checks received by us following the expiration of the Draw Period, regardless of whether you issue such Credit Line Checks during the Draw Period. We are not required to honor any request for any transfer or draw that would cause your outstanding indebtedness to exceed your Credit Limit. If we do make the advance, it does not mean that your Line of Credit has been increased. We may require you to repay the amount over your Line of Credit at once.

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

HAGT2CA (06/02) (Rev. 02/05)

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

Page 2 of 10

5.    **VARIABLE RATE**. The interest rate is variable, and the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) and the periodic payment may change. The **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) includes interest only and not other costs.

6.    **INITIAL INTEREST RATE**. Until    3    month(s) after the funding date (the "Initial Rate Period"), the daily periodic rate of **FINANCE CHARGE** is  0 .01438 %, which corresponds to an **ANNUAL PERCENTAGE RATE** of   5 .250  %. The periodic rate and corresponding **ANNUAL PERCENTAGE RATE** described above are the initial rates assessed under this Agreement, and are not based on the Index and Margin (defined below) used for later rate adjustments. Had these rates been based on the current Index and Margin, the daily periodic rate of finance charge and **ANNUAL PERCENTAGE RATE** would have been higher. Ask us for the current Index value, Margin, discount, and **ANNUAL PERCENTAGE RATE**. After you open this Line of Credit, rate information will be provided on periodic billing statements that we send you.

7.    **SUBSEQUENT INTEREST RATE**. After the Initial Rate Period and until the Final Maturity Date, the method of calculating your **ANNUAL PERCENTAGE RATE** will change and your interest rate and Minimum Payment may increase. Beginning after the initial rate period, the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) will equal the value of an "Index" as of the last publication date of the Index preceding the start of the Billing Cycle plus a "Margin" of ZERO AND 250/1000    percentage points (  .250 %), rounded to the nearest one-eighth of one percentage point (0.125%). The "Index" is the rate published in *The Wall Street Journal* under the designation "Money Rates" and shown as "prime rate" or "base rate on corporate loans posted by at least 75% of the nation's 30 largest banks," or substantially similar words.

The **ANNUAL PERCENTAGE RATE** may change on the first day of every month during the term of this Agreement ("Change Date") and the rate will be effective until the ensuing Change Date. The **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) will not change more than once each Billing Cycle. An increase in the Index will result in an increase in the **FINANCE CHARGE** and corresponding **ANNUAL PERCENTAGE RATE**, which may have the effect of increasing your Minimum Payment. A decrease in the Index will have the opposite effect of an increase. If the Index changes more frequently than the **ANNUAL PERCENTAGE RATE** is scheduled to change, we will always use the Index in effect on the day we adjust the **ANNUAL PERCENTAGE RATE** to determine the new **ANNUAL PERCENTAGE RATE**. In such a case, we will ignore any changes in the Index that occur between **ANNUAL PERCENTAGE RATE** adjustments.

Your maximum **ANNUAL PERCENTAGE RATE** will be 18%. Except for this 18% "cap," there is no limit on the amounts by which the **ANNUAL PERCENTAGE RATE** may increase or decrease on any Change Date or over the life of the Line of Credit.

If the Index becomes unavailable, we will select a new index (and, if necessary, a new margin) that will result in an **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) that is substantially similar to the rate in effect at the time the original Index became unavailable.

8.    **CALCULATION OF FINANCE CHARGES**. You agree to pay a periodic **FINANCE CHARGE** (which we will refer to as "interest") on your Account based on the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) derived in accordance with Sections 6 and 7. The **FINANCE CHARGE** begins to accrue on the day that your Account has been debited for each advance, and continues to so accrue until the day the outstanding Loan Account Balance is paid in full.

To determine the **FINANCE CHARGE** for a Billing Cycle, we apply a daily periodic rate of **FINANCE CHARGE** to the balance of your Loan Account Balance each day ("Daily Balance") during the Billing Cycle. To determine the daily periodic rate, we divide the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) in effect for the Billing Cycle by 365. To obtain the Daily Balance, we take the unpaid balance of your Account at the beginning of each day, add any new advances and other debits, except late charges, credit insurance premiums and returned check fees, and subtract payments or credits and unpaid finance charges. This results in your daily principal balance for each day in the Billing Cycle. We then determine the **FINANCE CHARGE** for each day by multiplying the Daily Balance for such day by the daily periodic rate. These daily finance charges are added together to obtain the total periodic **FINANCE CHARGE** for the period covered by the Billing Cycle.

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)    HAGT2CA (06/02) (Rev. 02/05)
GreenPoint Mortgage Funding

Page 3 of 10

Form Filled Using  *DocMagic*
800-649-1362  www.docmagic.com

9.   ADDITIONAL FINANCE CHARGES:  You agree to pay us the following additional FINANCE CHARGES:
   ▪   See Fee Schedule

**10.  MONTHLY PAYMENTS.**
   (A.)    **Draw Period.**  Each month, we will send you a periodic statement applicable to your Account.  You must pay us at least the Minimum Payment indicated on the periodic statement by the date indicated on the statement.  If, however, the unpaid balance in your Account is less than the Minimum Payment, your Minimum Payment will be equal to the balance in your Account.  The Minimum Payment will include (a) late charges and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; (b) accrued but unpaid interest for prior Billing Cycles; (c) premiums for any optional credit life insurance you may decide to obtain through us; and (d) an amount equal to the amount by which your Loan Account Balance exceeds your Credit Limit.
   You can pay off all or any part of what you owe at any time.  However, so long as you owe any amount, you must continue to make the Minimum Payment.  During the Draw Period the Minimum Payment will not reduce the principal outstanding on your Line of Credit.

   (B.)    **Repayment Period.**  During the Repayment Period, the Minimum Payment will be an amount equal to the accrued and unpaid finance charges, late charges and other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, plus 0.8333% of the Loan Account Balance outstanding at the end of the Draw Period.  During the Repayment Period, payment of the Minimum Payment only may not fully repay your Loan Account Balance.  If paying the Minimum Payment will neither reduce nor fully repay your Loan Account Balance, you will then be required to pay the entire balance in a single balloon payment on the Maturity Date shown above.  We are not obligated to refinance any portion of that indebtedness, but will consider your request to do so.  You must be prepared to repay the full amount due upon the expiration of this Agreement.  If you refinance this Account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**11.  APPLICATION OF PAYMENTS.**  We will apply all payments which we receive from you in the following order: to pay (a) amounts due under the Security Instrument to secure the amounts advanced under your Account and to protect our security; (b) any escrow payments, if we require such payments under the Security Instrument; (c) any late charges; (d) any other fees and charges other than finance charges; (e) accrued and unpaid finance charges; and (f) any unpaid principal balance.

**12. P REPAYMENT.**  You may repay all or any part of your outstanding Loan Account Balance, at any time, without penalty.  During the Draw Period, any amounts that you repay will subsequently be available to you for advances, subject to your Credit Limit and other limitations in this Agreement.  However, so long as you owe any amount you must continue to make your periodic Minimum Payment.  Even if the entire outstanding Loan Account Balance has been repaid, the Account will remain open for future advances during the Draw Period, until you or your agent instructs us in writing to close the Account.  The Security Instrument will remain in effect for all such future advances under your Account.

**13.  ADDITIONAL REPAYMENT TERMS.**  If you fail to make a payment, we may, but are not required to, advance money to you to make the payment.  All of the terms of this Agreement would apply to such an advance.
   You can pay off all or part of what you owe at any time.  However, so long as you owe any amount you must continue to make your periodic Minimum Payment.  Even if you pay more than the Minimum Payment, this does not affect your obligation to pay at least the Minimum Payment on subsequent payment due dates.

**14.  SET-OFF.**  You agree that we may set-off any amount due and payable under the terms of this Agreement against your right to receive money from us, unless prohibited by applicable law.  For example, our right of set-off does not apply to an Individual Retirement Account; other tax-deferred retirement accounts; or federal benefit, wage, salary and retirement payments held in an electronic transfer account (ETA).  In addition, our right of set-off does not apply to an account or other obligation if your rights arise only in a representative capacity or if you can obtain credit under this Agreement by using a credit card.
   Your right to receive money from us includes any deposit or share account balance you have with us; any money owed to you on an item presented to us or in our possession for collection or exchange; and any repurchase agreement or other

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

HAGT2CA (06/02) (Rev. 02/05)

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

Page 4 of 10

non-deposit obligation. "Any amount due and payable under the terms of this Agreement" means the total amount which we are entitled to demand payment of under the terms of this Agreement at the time we set-off.

**15. CHANGING THE TERMS OF THIS AGREEMENT.** Generally, we may not change any term of this Agreement. However, we may change a term in the following circumstances: (a) we may prohibit additional extensions of credit or reduce your credit limit during the period that the maximum **ANNUAL PERCENTAGE RATE** is reached; (b) we may make specified changes that you have specifically agreed to in writing; (c) we may make changes that unequivocally benefit you throughout the remainder of the Plan; (d) we may make insignificant changes to the terms of this Agreement; or (e) if this is a variable rate plan, we may change the Index and Margin if the original Index described in this Agreement is no longer available. Any new index will have a historical movement similar to the original Index, and, together with a new margin, will result in an interest rate substantially similar to the rate in effect at the time the original Index became unavailable.

If we are required to send notice of a change in terms, we will send the notice to your address listed in this Agreement.

**16. ADDITIONAL CHARGES.** You agree to pay the following additional charges pursuant to your Line of Credit:

- Late Fee. A late charge on any payment not paid within        15        days of the payment due date of **6.000**  % of the payment;

- Annual Membership Fee. An annual fee of $    75.00      for each twelve-month period during the Draw Period. This fee will be added to your Loan Account Balance on a yearly basis;

- Returned Check Fee. A fee of $    25.00      for any check that you have issued in connection with this Plan that is returned dishonored;

- Termination Fee of $750.00 will be charged if your Home Equity Line of Credit is closed and the Security Instrument is reconveyed within the first 12 months after the date of closing or $500.00 if reconveyed after the first 12 months but prior to the 37th month. This will be charged only if permitted by applicable law;

- (Other) See Fee Schedule

**17. INSURANCE.** You must maintain on the Property a homeowner's policy of casualty and liability insurance and flood insurance, if applicable, in such amount(s) and for such period(s) of time as we may require. To open your Account, you must provide us with written proof, such as a current certificate of insurance, showing the required insurance coverage on the Property, as well as an endorsement of such policy in favor of us. In addition, the policy must require that your insurance company provide us with at least fifteen (15) days written notice of any change in insurance coverage or of cancellation of your policy. We may refuse to honor checks or to make other advances or transfers of funds under the Account until we receive satisfactory evidence with respect to these items. You may purchase insurance from anyone you want who is acceptable to us. The Security Instrument more fully describes your insurance obligations.

**18. TERMINATION AND ACCELERATION.** You will be in default of this Agreement, and we can terminate your Account and require immediate payment of the entire outstanding Loan Account Balance, plus accrued interest and other charges if any of the following occur: (a) you engage in fraud or material misrepresentation in connection with any phase of this Line of Credit; (b) you fail to meet the repayment terms of this Agreement for any outstanding balance; or (c) your action or inaction adversely affects the Property, our security interest or any other right that we have in the Property, including, but not limited to: (i) failure to maintain required insurance on the Property; (ii) the sale, transfer, conveyance, or encumbrance of the Property in violation of the Security Instrument; (iii) failure to maintain the Property or use of the Property in a destructive or illegal manner; (iv) commission of waste; (v) failure to pay taxes on the Property or otherwise act or fail to act and thereby cause a lien to be filed against the Property that is senior to the lien of the Security Instrument; (vi) your death, if you are solely obligated under this Agreement, or if the death of one of several Borrowers under this Agreement causes our security to be adversely affected; (vii) the Property is taken through eminent domain; (viii) a judgment is filed against you and subjects you and the Property to action that adversely affects our interest; (ix) a prior lienholder forecloses on the Property

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

Page 5 of 10

HAGT2CA (06/02) (Rev. 02/05)

Form Filled Using **DocMagic**
800-649-1362  www.docmagic.com

and as a result, our interest is adversely affected; or (x) you move out of the dwelling and our security interest is thereby adversely affected.

The Security Instrument also describes how and under what conditions you may be required to make immediate payment of the entire outstanding Loan Account Balance, plus accrued interest and other charges you owe under this Agreement. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. REMEDIES.** We may terminate your Line of Credit, require you to pay the entire outstanding Loan Account Balance in one payment, charge you a termination fee (if provided for in this Agreement), and charge you any other fees related to the collection of the amount owing if you are in default in any manner described above. Furthermore, in that instance we may also take any other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance. If you fail to pay the Loan Account Balance after notice and demand thereof, and as required by applicable law, we may foreclose the Security Instrument and sell the Property. We can elect to exercise or delay enforcement of any of our rights under this Agreement and/or the Security Instrument without losing any such rights. If we elect not to exercise or enforce any of our rights, such election shall not be deemed a waiver of any of those rights. If we elect to terminate this Plan and accelerate the amounts owing on your Account, we may use our right to set-off, unless prohibited by applicable law.

**20. SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT.** We may temporarily prohibit you from obtaining additional advances or reduce your Credit Limit during any period in which: (a) the value of the dwelling that secures this Line of Credit declines significantly below the dwelling's appraised value for purposes of this Plan; (b) we reasonably believe you will not be able to fulfill the repayment obligations because of a material change in your financial circumstances; (c) you are in default of any material obligation of this Agreement, or any agreement securing this Agreement; (d) a government action prevents us from imposing the Annual Percentage Rate provided for in this Agreement; (e) the priority of our security interest is adversely affected by a government action to the extent that the value of the security interest is less than 120% of the Line of Credit; (f) the Annual Percentage Rate corresponding to the daily periodic rate reaches the maximum rate allowed under this Agreement; or (g) we have been notified by a regulatory agency that continued advances constitute an unsafe and unsound business practice.

In the event that we suspend your right to additional advances or reduce your Line of Credit, we will send you notice of our decision to do so at the address listed in this Agreement. If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this Plan and you believe that your situation has changed, you must request that we re-evaluate your situation in order to reinstate your privileges.

**21. FINANCIAL AND CREDIT INFORMATION.** You will promptly provide us with personal financial information, including a financial statement, if we should request it for the purpose of reviewing your Account or updating your credit file. We may request such information from time to time, whether or not we have reason to believe that there are any problems with your Account or with your creditworthiness. Any advances or transfers made under the Account are made in reliance upon the information that you provide us, which you represent and warrant to us is true and accurate as of the date such information

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding
HAGT2CA (06/02) (Rev. 02/05)
Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com
Page 6 of 10

is given. You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the person or agencies to whom we make these inquiries to supply us with the information we request.

As required by California law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

22.   COLLECTION COSTS. If you default on this Agreement, and we must take steps to collect amounts you owe us under this Agreement or to protect the lien of the Security Instrument or the security of the Property, you agree to pay all of our costs and expenses incurred in connection with such actions, including reasonable attorneys' fees and court costs.

23.   GOVERNING LAW AND ENFORCEABILITY. Federal law applies to certain aspects of this Agreement. This Agreement will be governed by the laws of the jurisdiction in which the Property is located, except to the extent federal law applies. If any part of this Agreement is determined to be invalid, then we may enforce the remainder of this Agreement as if the invalid provision did not exist.

24.   TERMINATION OF AGREEMENT. Your Account will automatically terminate on the earlier of the Maturity Date shown above or on the date we give you notice of the termination as the result of an occurrence of a default (as described in Section 18). Upon termination of the Account, the entire Loan Account Balance then outstanding, with accrued interest and any fees and charges owing on the Account, will be due and payable in full on that date. You can terminate this Agreement by written notice of termination of this Agreement and a request for a discharge of the Security Instrument mailed or delivered to us at any time. Your notice of termination will be effective on the first business day after we receive it and the entire principal balance outstanding on your Account, plus interest accrued thereon, together with fees and charges owing on the Account, will be due and payable in full on that date.

25.   JOINT AND SEVERAL LIABILITY; TERMINATION OF ACCOUNT. If this Account is jointly held, each of you authorizes any other Borrower, on his or her request alone and without the consent or knowledge of the other(s), to cancel the Line of Credit, to request and receive advances of principal under your Line of Credit Account, to take any action or to give or receive any notice under this Agreement, and to take all other actions in connection with this Agreement. In addition, any notice given by us to one of you shall be effective as to all of you. In any event, each of you will be legally responsible for payment of the total amount of the Loan Account Balance and applicable charges, regardless of any divorce, legal separation or other legal proceedings.

26.   NOTICES. We will mail statements and notices to you at the address set forth above. You must notify us in writing of any change in your name, address, or place of employment. You may send written notices to us at the address set forth above or at such other address that we designate in writing.

27.   REPRESENTATIONS AND WARRANTIES. You represent and warrant to us that the information contained in the loan application, in each material respect, was true at the time the loan application was completed. You represent and warrant to us that the terms of any existing deed of trust, mortgage, or security deed on the Property permit us to enter into this Agreement and that the loans secured by such existing deed of trust, mortgage, or security deed are current in all material respects and are not in default.

28.   TAX DEDUCTIBILITY. You acknowledge that we (including our employees and representatives) do not make any representations or warranties to you about the tax consequences of you establishing or using this Line of Credit (including the deductibility of interest or fees), and we will not be liable if interest or fees are not deductible. You should consult a tax advisor regarding the deductibility of interest, charges, and fees under this Agreement.

29.   BILLING ERRORS. Your rights and responsibilities with regard to billing errors are explained in the document under the heading "YOUR BILLING RIGHTS," which is attached to this Agreement.

30.   LOAN CHARGES. If the Account is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected, or to be collected, in connection with the Account exceeds the permitted limits,

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

HAGT2CA (06/02) (Rev. 02/05)

Form Filled Using DocMagic
800-649-1362  www.docmagic.com

Page 7 of 10

then: (i) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from you which exceeded permitted limits shall be refunded to you. We will refund the excess either by reducing the principal owed under the Account or by making a direct payment to you. If we apply the excess toward reducing the principal balance, the reduction will be treated as a partial prepayment.

**31.   ASSIGNS.** This Agreement shall be binding upon you and each of your heirs, executors, administrators, successors and assigns, subject to the limitations on selling, transferring or otherwise conveying the Property contained in this Agreement and the Security Instrument.

**32.   WAIVERS.** To the extent not prohibited by law and subject to any required notice and opportunity to cure a default for failure to make a required payment, you waive protest, presentment for payment, demand, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of nonpayment.

**33.   TERMINATION FEE.** To the extent permitted by applicable law, you will be charged a Termination Fee if this Line of Credit is closed and reconveyed within the first 36 months after the Account is established.

By executing this Agreement, you acknowledge that you have read this Agreement and that you agree to its terms and conditions. You also acknowledge that each person owning an interest in the Property has received a copy of this Agreement and two copies of the Notice of Right to Cancel, if applicable.

| | | |
|---|---|---|
| Borrower SOON HEE SIN | Date | Borrower | Date |

| | | |
|---|---|---|
| Borrower | Date | Borrower | Date |

| | | |
|---|---|---|
| Borrower | Date | Borrower | Date |

LENDER: PRIMUS LENDING CORP.

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

Page 8 of 10

HAGT2CA (06/02) (Rev. 02/05)
Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

# YOUR BILLING RIGHTS
# KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

## NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.

- The dollar amount of the suspected error.

- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking, share draft or other account, you can stop the payment on any amount you think is wrong. To stop payment your letter must reach us three business days before the automatic payment is scheduled to occur.

## YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any mistaken amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. We must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Home Equity Line of Credit Agreement and Promissory Note - California (Secondary Lien)
GreenPoint Mortgage Funding

HAGT2CA (06/02) (Rev. 02/05)

Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com

Page 9 of 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

**Recording Requested By:**

PRIMUS LENDING CORP.
[Company Name]

**And When Recorded Mail To:**

PRIMUS LENDING CORP.
[Company Name]


[Name of Natural Person]


3699 WILSHIRE BLVD. SUITE 670
[Street Address]


LOS ANGELES, CALIFORNIA 90010
[City, State Zip Code]

————————————————[Space Above This Line For Recording Data] ————————————————

Loan Number: 7-06-0000370              MIN 1003141-7060000370-1

# HOME EQUITY LINE OF CREDIT DEED OF TRUST
## Secondary Lien
## (Securing Future Advances)

     Borrower has established a line of credit ("Home Equity Line of Credit") with Lender as evidenced by Borrower's Home Equity Line of Credit Agreement and Promissory Note dated the same date as this Security Instrument, and all renewals, extensions, modifications, replacements and substitutions thereof (collectively, the "Agreement").    Lender has agreed to make advances to Borrower under the terms of the Agreement. Such advances shall be of a revolving nature and may be made, repaid and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time) shall not exceed ONE HUNDRED FORTY-TWO THOUSAND AND 00/100 (U.S. $142,000.00 ) plus interest thereon (the "Credit Limit").    That sum is referred to in the Agreement as the Credit Limit.    The entire indebtedness under the Agreement, if not paid earlier, is due and payable on JANUARY 1, 2022 or on such later date as may be permitted by Lender in writing, or at such earlier date in the event such indebtedness is accelerated in accordance with the terms of the Agreement and/or this Security Instrument.

## DEFINITIONS

Words used in multiple sections of this Security Instrument are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20.   Certain rules regarding the usage of words used in this Security Instrument are also provided in Section 15.

    (A)    "**Security Instrument**" means this Home Equity Line of Credit Deed of Trust, which is dated DECEMBER 20, 2006                                    , together with all Riders to this document.

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED       58919CA 08/02
THE COMPLIANCE SOURCE, INC.                                                    ©2002, The Compliance Source, Inc.
www.compliancesource.com

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

    (B)   "**Borrower**" is SOON HEE SIN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
    (C)   "**Lender**" is PRIMUS LENDING CORP.

Lender is a CALIFORNIA CORPORATION
organized and existing under the laws of CALIFORNIA
Lender's address is 3699 WILSHIRE BLVD. SUITE 670, LOS ANGELES, CALIFORNIA 90010
    (D)   "**Trustee**" is FIRST AMERICAN TITLE COMPANY
520 NORTH CENTRAL AVENUE, GLENDALE, CALIFORNIA 91203
    (E)   "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
    (F)   "**Agreement**" means the Home Equity Line of Credit Agreement and Promissory Note signed by Borrower and dated DECEMBER 20, 2006    . The Agreement states Lender has agreed to make advances to Borrower under the terms of the Agreement, such advances to be of a revolving nature. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time under the Agreement) not to exceed the Credit Limit of ONE HUNDRED FORTY-TWO THOUSAND AND 00/100    Dollars (U.S. $ 142,000.00    ) plus interest. Borrower has promised to pay the total outstanding balance in Periodic Payments and to pay the entire debt in full not later than JANUARY 1, 2022    .
    (G)   "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
    (H)   "**Account**" means the debt evidenced by the Agreement, plus interest, any other charges due under the Agreement, and all sums due under this Security Instrument, plus interest.
    (I)   "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Home Improvement Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) [specify] | | |

    (J)   "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
    (K)   "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
    (L)   "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
    (M)   "**Escrow Items**" means those items that are described in Section 3.

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED    58919CA 08/02
THE COMPLIANCE SOURCE, INC.    ©2002, The Compliance Source, Inc.
www.compliancesource.com

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

Page 2 of 15

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Agreement and the Account.

(P)    "Periodic Payment" means the amount due from Borrower to Lender each month for (i) principal and/or interest under the Agreement, and all late charges and other charges provided herein or authorized by the Agreement, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to the escrow account requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Agreement and the Account do not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (a) the prompt repayment of the Account evidenced by the Agreement, and all renewals, extensions and modifications of the Agreement, with interest thereon at the rate provided in the Agreement; (b) the payment of all other sums due under the Agreement, with interest thereon at the rate provided in the Agreement, (i) advanced to protect the security of this Security Instrument, (ii) incurred by Lender in connection with the enforcement of its rights under this Security Instrument and/or the Agreement, and/or (iii) required to be paid as set forth herein or in the Agreement; and (c) the performance of Borrower's covenants and agreements under this Security Instrument, the Agreement and any prior mortgage or deed of trust.

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in the

COUNTY                          of          LOS ANGELES                          :
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

LOT 34, OF TRACT NO. 722, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
16, PAGE(S) 6 AND 7 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

Assessor's Identification Number: 5501-020-008

which currently has the address of 233 SOUTH VIRGIL AVENUE
                                                              [Street]

LOS ANGELES                    , California          90004                    ("Property Address").
[City]                                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Agreement and if allowable under Applicable Law, any prepayment charges, late charges and other charges due under the Agreement. Payments due under the Agreement and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

2. **Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Agreement or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied to the outstanding Account in the following order of priority: (i) any prepayment charges due under the Agreement and/or this Security Instrument if permitted by Applicable Law; (ii) amounts due under this Security Instrument to secure the amounts advanced under the Account and to protect Lender's security; (iii) any escrow payments under Section 3 of this Security Instrument, if Lender requires such payments; (iv) any late charges; (v) any other fees and charges other than finance charges; (vi) accrued and unpaid finance charges due under the Agreement; and (vii) any unpaid principal balance due under the Agreement.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Agreement.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount of the Periodic Payments.

3. **Funds for Escrow Items.** Subject to Applicable Law, Borrower shall pay to Lender on the days Periodic Payments are due under the Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED    58919CA 08/02
THE COMPLIANCE SOURCE, INC.    ©2002, The Compliance Source, Inc.
www.compliancesource.com

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

Page 4 of 15

any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Agreement, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender the Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA to mean the amount by which a current escrow balance falls short of the target balance at the time of escrow analysis, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA to mean the amount of the negative balance in the escrow account, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

4. **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED        58919CA  08/02
THE COMPLIANCE SOURCE, INC.                                              ©2002, The Compliance Source, Inc.
www.compliancesource.com

Page 5 of 15

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement, the Account and this Security Instrument, if allowed under Applicable Law.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with the Agreement, the Account and this Security Instrument, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the Account and interest shall accrue at the rate set forth in the Agreement, from the time it was added to the unpaid balance until it is paid in full.

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement, up to the amount of the outstanding Account balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account, up to the amount of the outstanding Account balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, and subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such

insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds, and shall be the sole obligation of Borrower. Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Lender believes that Borrower has abandoned the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement, the Account or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement, the Account or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. If the Property is damaged, unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7. **Borrower's Home Equity Line of Credit Application.** Borrower shall be in default if, during the home equity line of credit application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Agreement, the Account and this Security Instrument. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Lender believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED    58919CA 08/02
THE COMPLIANCE SOURCE, INC.    ©2002, The Compliance Source, Inc.
www.compliancesource.com

Page 7 of 15

Form Filled Using  *DocMagic*
800-649-1362  www.docmagic.com

assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law. These amounts shall bear interest at the rate set forth in the Agreement from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Mortgage Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Agreement and the Account) for certain losses it may incur if Borrower does not repay the Account as agreed. Borrower is not a party to the Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of entering into the Agreement and establishing the Account, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is damaged and if the restoration or repair is economically feasible and Lender's security is not lessened, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

If Lender believes that the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, then Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED    58919CA 08/02
THE COMPLIANCE SOURCE, INC.                                                        ©2002, The Compliance Source, Inc.
www.compliancesource.com

Form Filled Using **DocMagic**
800-649-1362  www.docmagic.com

Page 8 of 15

rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization, if applicable, of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization, if applicable, of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** When Borrower (as that term is defined above) includes more than one person, Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender shall have the authority to impose additional fees and charges to perform services requested by or on behalf of Borrower, or to otherwise administer and service the Agreement and the Account. The additional fees and charges may include administrative costs incurred by Lender and/or in reimbursement of payments made by Lender to third parties. Such fees and charges may include, without limitation, any and all costs or fees associated with the origination and/or servicing of such Agreement and the Account, document copy or preparation fees, transmittal, facsimile or delivery fees, reconveyance and release fees, property inspections and returned check or insufficient funds charged in connection with payments made by or on behalf of Borrower under the Agreement and all other such fees for ancillary services performed by Lender for Borrower or at Borrower's request or for services necessitated by or resulting from Borrower's default or malfeasance relating to this Security Instrument or the Agreement or incurred by Lender or assessed upon Borrower pursuant to the provisions of this Security Instrument or the Agreement. Such fees and charges shall be secured by this Security Instrument up to the amount of the Credit Limit and, unless Borrower and Lender agree to other terms of payment, shall bear interest from the date assessed by Lender at the rate stated in the Agreement, and in effect from time to time, and shall be payable, with interest, immediately following written demand from Lender to Borrower requesting payment thereof. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

If either the Agreement or the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the Agreement

and the Account exceed the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower, which Lender may accomplish by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower may have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED       58919CA 08/02
THE COMPLIANCE SOURCE, INC.                                              ©2002, The Compliance Source, Inc.
www.compliancesource.com

Page 10 of 15

Form Filled Using **DocMagic**
800-649-1362  www.docmagic.com

judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of the Agreement and the Account; Change of Loan Servicer; Notice of Grievance.** The Agreement and the Account, or a partial interest in the Agreement and the Account (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Agreement and the Account. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Agreement and the Account are sold and thereafter the Agreement and the Account are serviced by a Loan Servicer other than the purchaser of the Agreement and the Account, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Agreement and the Account unless otherwise provided by the purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 19. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including, but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Events of Default; Acceleration; Remedies. The occurrence of any one or more of the following events shall, at the election of Lender, constitute an "Event of Default," and shall entitle Lender to terminate the Agreement and the Account and accelerate the indebtedness secured hereby: (a) any Borrower engages in fraud or material misrepresentation, whether by action or omission, in connection with any phase of the Agreement; (b) Borrower fails to meet the repayment terms set forth in the Agreement; or (c) Borrower's action or inaction adversely affects the Property or Lender's security interest, including, but not limited to, Borrower's actions or omissions that constitute "Events of Default" under the Agreement, or Borrower's failure to perform any material covenants or agreements contained in this Security Instrument.**

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - SECONDARY LIEN MERS MODIFIED    58919CA 08/02
THE COMPLIANCE SOURCE, INC.                                        ©2002, The Compliance Source, Inc.
www.compliancesource.com

Page 12 of 15

Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com

**22. Reconveyance.** Upon request from Borrower and upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes and agreements evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**24. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**25. Obligation to Advance.** Lender's obligation to advance funds to Borrower upon and subject to the terms stated in the Agreement after receipt of a Credit Line Check or other request for an advance made in accordance with the Agreement shall be obligatory.

**26. Request for Notice of Default and Sale.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____ , in Book _____ page _____ records of _____ County, (or filed for record with recorder's serial number _____ , Country) California, executed by _____

as trustor (or mortgagor) in which _____

is named as beneficiary (or mortgagee) and _____

as trustee be mailed to Name _____

at Address _____

**Notice:** A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature _____

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page two of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____
Printed Name                              Printed Name

_____ (Seal)            _____ (Seal)
SOON HEE SIN             -Borrower                                 -Borrower

Printed Name                              Printed Name

_____ (Seal)            _____ (Seal)
                        -Borrower                                 -Borrower

Printed Name                              Printed Name

_____ (Seal)            _____ (Seal)
                        -Borrower                                 -Borrower

Printed Name                              Printed Name

State of CALIFORNIA                §
                                   §
County of LOS ANGELES              §


      On                              before me,
                                               , personally appeared
SOON HEE SIN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

      Witness my hand and official seal.


_____
Notary Public

      (Seal)                    My Commission Expires:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV09- 3219 PSG (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
   **312 N. Spring St., Rm. G-8**
   **Los Angeles, CA 90012**

[ ] **Southern Division**
   **411 West Fourth St., Rm. 1-053**
   **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
   **3470 Twelfth St., Rm. 134**
   **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

TRINITY LAW ASSOCIATES
3470 WILSHIRE BLVD, SUITE 930
LA, CA 90010
(213)384-9000

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| SOON HEE SIN | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV09-03219 PSG (MANx)** |
| v. | |
| PRIMUS LENDING CORP, a California corporation; GMAC MORTGAGE CORP.; NEW YORK FINANCIAL, INC. , and DOES 1-10, inclusive | **SUMMONS** |
| DEFENDANT(S). | |

TO: DEFENDANT(S): <u>PLEASE SEE ATTACHED</u>

    A lawsuit has been filed against you.

    Within <u>20</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>TIMOTHY D. THURMAN</u>, whose address is <u>3470 WILSHIRE BLVD, SUITE 930 LA, CA 90010</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**MAY - 7 2009**

**LA'REE HORN**

Dated: _____    By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1192

---

CV-01A (12/07)                    **SUMMONS**

1  PRIMUS LENDING CORP, a California corporation
2  GMAC MORTGAGE CORP
   NEW YORK FINANCIAL, INC
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
**COMPLAINT FOR DAMAGES AND RECISSION**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
SOON HEE SIN

**DEFENDANTS**
PRIMUS LENDING CORP, a California corporation; GMAC MORTGAGE CORP, NEW YORK FINANCIAL, INC

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

TRINITY LAW ASSOCIATES
3470 WILSHIRE BLVD, SUITE 930  LA, CA 90010
(213)384-9000

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No        ☑ **MONEY DEMANDED IN COMPLAINT:** $ 500,000+

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☑ 371 Truth in Lending |  | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other |  |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations |  | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange |  | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations |  | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability |  | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY |  | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee |  |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability ☐ 290 All Other Real Property |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   **CV09-03219**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date May 6, 2009

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |